UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EDRICK WILLIAMS, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) No. 1:19-cv-02264-SEB-TAB |
| PEAK, GARY, JUSTIN RICHEY, NELL, BRIAN S. MCNALLY, BRANDON LOWDER, ROCKEL, MICHAEL PFLEEGER, CALEB HAISLEY, ARTHUR NIEMAN, WARNER, ANDREW BAGIENSKI, N. ROCKEL, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

For the reasons explained in this Entry, Defendants' motion for summary judgment, dkt. [122], is **granted.**

### I. Background

Indiana prisoner Edrick Williams was at all relevant times confined at the Pendleton Correctional Facility (Pendleton). He brings this 42 U.S.C. § 1983 civil rights action against 12 remaining defendant correctional officers.[1]

---

[1] Although there are two Officer Rockels named in the complaint and listed on the docket, there was only one individual employed at Pendleton with the last name Rockel in April and May 2019. Dkt. 122-2, ¶ 8.

1

Mr. Williams has chronic asthma. He alleges that on five occasions in April and May 2019, Defendants did not take him to medical services for breathing treatments when he complained of shortness of breath. Mr. Williams alleges that he could have died as a result of not receiving the breathing treatments. Dkt. 1. His claims of deliberate indifference to a serious medical condition were allowed to proceed at screening. Dkt. 8 (Screening Entry).

The Defendants seek to resolve the claims against them through summary judgment. Mr. Williams has opposed the motion. Dkt. 127.

## II. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018). The Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Johnson v. Advocate Health and Hosps. Corp.* 892 F.3d 887, 893 (7th Cir. 2018).

---

Claims against Nurse Jones were dismissed on January 3, 2020. Dkt. 74.

### III.  Discussion

**A. Undisputed Facts**

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

Mr. Williams has had asthma since he was a child. Dkt. 122-1 at 14:12-18 (Williams' Dep.). He uses an inhaler. *Id.* at 15:21-22. He tries to limit the use of his inhaler because if he uses it too often, he believes it could "crystalize his lungs" and cause an asthma attack. *Id.* at 62:7-12.

Only custody officers can escort an inmate to medical, but before doing so, they have to get the approval of a superior officer such as a sergeant. *Id.* at 44:12-21; 65:3-66:18. If an offender asks for transport to medical, an officer relays that information to his supervising officer and if the request is approved, the supervising officer arranges the transportation. Dkt. 122-3 at ¶ 8 (Officer Rockel Dec.).

**1.     April 14, 2019**

At around 6:00 pm on April 14, 2019, Mr. Williams could hear a fire alarm and he smelled smoke. Dkt. 122-1 at 36:17-37:5. Other offenders living in Mr. Williams' cell house had set a fire. *Id.* at 35:6-11. The fire had been put out, but Mr. Williams was becoming short of breath. *Id.* At around 7:15 pm, Mr. Williams saw Officer Peak walk past his cell. *Id.* at 39:9-19. Williams showed Officer Peak his medical treatment card and his inhaler and told him that he needed to go over to medical for a breathing treatment. *Id.* at 43:4-25; 35:11-16. Williams was not having an asthma attack, but he felt shortness of breath. *Id.* at 39:3-8. He believes that if he did not have his inhaler

with him, it would have led to an asthma attack. *Id.* Officer Peak told Williams that he would talk to Sergeant Gary about it. *Id.* at 35:15-16.

At around 9:00 or 10:00 pm, Officer Richey came by and Mr. Williams told him he was having shortness of breath and he needed to go to medical for a breathing treatment. *Id.* at 42:4-43:21. Mr. Williams showed Officer Richey his inhaler and his medical treatment card showing that he was authorized for breathing treatments. *Id.* Officer Richey said he would talk to Sergeant Gary about it. *Id.* at 44:9-12.

No one came to take Mr. Williams for a breathing treatment that night, and when he saw Officer Peak again around midnight, Officer Peak told Williams that he had said something to the sergeant, but with the fires being set and everything, he had not been able to get back to let Mr. Williams know. *Id.* at 41:18-25.

When Mr. Williams asked for a breathing treatment the next day, April 15, 2019, he was promptly taken to medical. *Id.* at 51:15-23.

### 2. April 16, 2019

Mr. Williams saw Dr. Paul Talbot on April 16, 2019, at 11:24 am. Dkt. 122-5 at 9-11. Mr. Williams reported that he "feels better" and Dr. Talbot noted "some improvement," and "fair control" but his asthma was recorded as "chronic persistent" and "moderate severity." *Id.*

That evening, Mr. Williams experienced shortness of breath, light-headedness, and tightness in his chest. Dkt. 122-1 at 52:20-24. Sometime after 6:00 pm, Mr. Williams stopped Officer Neal,[2] showed him his inhaler and medical treatment card, and let him know that he was having difficulty breathing. *Id.* at 53:5-14. Officer Neal said he would talk to Sergeant McNally about it. *Id.* at 53:15-16.

---

[2] Incorrectly named Officer Nell in the complaint.

Later that evening, Mr. Williams saw Officer Neal again and the officer told him he had talked with the sergeant, but he couldn't make the sergeant do anything because he's a superior officer. *Id.* at 54:9-15. Mr. Williams was not experiencing a medical emergency at that time, but his breathing was not clear. *Id.* at 56:15-17. Between the two times Mr. Williams saw Officer Neal that evening, his breathing improved because he used his inhaler. *Id.* at 56:23-57:2.

### 3. April 17, 2019

On April 17, 2019, Mr. Williams put in a health care request because he was having sharp pain in his left foot. *Id.* at 48:7-10; dkt. 122-5 at 6. At around 1:20 pm, he saw a nurse for his foot pain. Dkt. 122-5 at 6. He did not complain about his asthma at this time. *Id.* at 6-8.

That evening, Mr. Williams began experiencing shortness of breath and informed Officer Lowder that he needed a breathing treatment. Dkt. 122-1 at 61:24-62:3. Officer Lowder said he would make Sergeant Pfleeger aware of it and that was all he could do. *Id.* at 63:6-15.

Sometime between 9:00 and 11:00 pm during medicine pass, Officer Rockel and a nurse walked by Mr. Williams' cell. *Id.* at 63:22-64:7. Mr. Williams told Officer Rockel that he was a chronic asthmatic, he was experiencing shortness of breath, and he needed a breathing treatment. *Id.* at 65:22-66:5. He showed him his inhaler and his medical treatment card. *Id.* Officer Rockel told Mr. Williams that he would let the sergeant know. *Id.* at 66:7-8. Mr. Williams did not want to rely solely on his inhaler. *Id.* at 62:4-12. Mr. Williams did not try to ask the nurse for a breathing treatment because he believed it would be futile. *Id.* at 64:8-24. He also believed that there was nothing a nurse could do about getting him to medical because only custody staff could escort him to medical. *Id.* at 65:1-5.

### 4. April 29, 2019

On April 29, 2019, Mr. Williams felt like he was possibly having an asthma attack. *Id.* at

5

69:16-17. At around 9:30 am, an officer and a nurse were passing out medicine and he told the officer that he couldn't breathe and needed a breathing treatment. *Id.* at 71:3-72:13. The officer took his medical treatment card and said she would let the sergeant know. *Id.* at 71:25-72.6. Mr. Williams did not try to speak to the nurse. *Id.* at 71:14-22.

By 11:00 am, Mr. Williams asked other inmates to call out for help, and Sergeant Warner came to his cell. *Id.* at 69:17-70:5; 72:13-17. Sergeant Warner had Mr. Williams' medical treatment card that the officer had given him, and he told Mr. Williams that he was aware of the situation and was just waiting on an officer to be dispatched from the yard to the cell house to come get him. *Id*. at 74:8-14. Sergeant Warner also told Mr. Williams that he had contacted medical. *Id.* at 75:3-5. Although no officer came to escort Mr. Williams that day, he used his inhaler and started to feel better a couple of hours later. *Id.* at 75:17-76:10.

### 5. May 7, 2019

During the day on May 7, 2019, Mr. Williams began experiencing shortness of breath and light-headedness. *Id.* at 80:13-20; 82:8-15. He told Officer Rockel that he was having trouble breathing and he needed to go to medical to have a breathing treatment. *Id.* at 82:1-4.

Officer Rockel did not observe Mr. Williams suffering from a medical emergency and therefore did not call a Signal 3000 for a medical emergency. Dkt. 122-3 at ¶ 11. Officer Rockel did not have the authority to transport an offender to medical without a supervising officer's approval. *Id.* at ¶ 7.

After speaking with Officer Rockel, Mr. Williams went to sleep. Dkt. 122-1 at 83:10-12. Later, Mr. Williams saw Officer Haisley walking the range and told her about his situation. *Id.* at 83:16-19. She told Mr. Williams that she was aware, and that Sergeant Nieman had already been told. *Id.*  They were just waiting. *Id.*

After the two officers reported to Sergeant Nieman Mr. Williams' request for a breathing treatment, Sergeant Nieman called medical staff twice by phone. Dkt. 122-4 at ¶¶ 5, 6. Both times, Sergeant Nieman was told by medical staff that they were unable to see Mr. Williams and that correctional staff were to monitor Mr. Williams' condition. *Id.* at ¶ 7. Sergeant Nieman instructed the officers to continue monitoring Mr. Williams' condition. *Id.* at ¶ 8. He did not see Mr. Williams that day. *Id.* at ¶ 9.

**B.  Analysis**

Mr. Williams argues that the Defendants were deliberately indifferent to his serious medical condition of chronic asthma. At all relevant times, Mr. Williams was a convicted offender. This means that the Eighth Amendment applies to his deliberate indifference claims. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017) ("the Eighth Amendment applies to convicted prisoners"). To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019); *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016).

"A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014). The subjective standard "requires more than negligence and approaches intentional wrongdoing." *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020) (internal quotation omitted). Even a showing of medical malpractice is not sufficient. *Id.* "Rather, the evidence must show that the prison official . . . knew or was aware of—but then disregarded—a substantial risk

of harm to an inmate's health." *Id.*

The Defendants first argue that Mr. Williams' shortness of breath was not an objectively serious medical condition. A reasonable jury could find, however, that if a person with chronic asthma feels short of breath, that is a type of condition that would require treatment, even if only through the use of an inhaler. *See Lee v. Young,* 533 F.3d 505, 510 (7th Cir. 2008) ("As a general matter, asthma can be, and frequently is, a serious medical condition, depending on the severity of the attacks.") (internal quotation omitted). The Defendants are not entitled to summary judgment based on the objective prong of the deliberate indifference test.

### 1.     Claim Against Lt. Bagienski

The Court next addresses the claim against Lt. Bagienski. Mr. Williams has sued Lt. Bagienski because he's "the overall superior officer of the cell house." Dkt. 122-1 at 77:17-19. Lt. Bagienski was not personally involved in the events at issue. *Id.* at 78:12-15. He was made aware of the events "after the fact" when Mr. Williams made an informal grievance. *Id.* at 78:24-79:4.

"Individual liability under § 1983… requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago,* 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")). Here, it is undisputed that Lt. Bagienski was not aware of or involved in Mr. Williams' requests for breathing treatments at the times they were made. It is well-settled that denying an inmate's grievance or refusing to investigate an incident after the fact does

not, by itself, amount to a constitutional violation. *See e.g.*, *McGee v. Adams*, 721 F.3d 474, 485 (7th Cir. 2013). Therefore, Lt. Bagienski is entitled to summary judgment.

### 2. Claims Against Officers Peak, Richey, Neal, Lowder, Rockel, and Haisley

"To determine if a prison official acted with deliberate indifference, we look into his or her subjective state of mind." *Petties,* 836 F.3d at 728. "[S]howing mere negligence is not enough." *Id.* "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim." *Id.* "Instead, the Supreme Court has instructed us that a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Id.* This is a very high standard for liability.

None of the officers Mr. Williams asked for breathing treatments responded recklessly. Each officer told Mr. Williams that he would report Mr. Williams' request for a breathing treatment to the superior officer on duty. Several of them later reported to Mr. Williams that they had, in fact, told the superior officer about the requested breathing treatment. None of the officers refused to pass the information along. In addition, each officer was aware that Mr. Williams had his inhaler with him in his cell to use as needed. In fact, at times, Mr. Williams' condition did improve because he used his inhaler. Another time, he fell asleep after he asked for a breathing treatment. Officer Rockel specifically did not observe Mr. Williams suffering from a medical emergency. Indeed, Mr. Williams testified that on April 16, April 17, and May 7, 2019, he was not suffering from a medical emergency. Dkt. 122-1 at 12:19-13:9. On the other two dates, April 14 and 29, Mr. Williams was able to use his inhaler which improved his ability to breathe. *Id.* at 38:16-39:8; 75:17-76:10. He also chose not to ask nurses who were within earshot to help facilitate a breathing treatment.

Mr. Williams testified in his deposition that he did not expect the custody officers to do anything more than notify a higher authority, because he knew that the officers could not "go over his superior officer's head and do something that requires anything that needs the say-so of the sergeant." *Id.* at 66:15-18. "These are subordinate officers, you dig? There is nothing that they can do, that they would do above their superior officer." *Id.* at 66:8-11. Thus, the custody officers did precisely what they were supposed to do.

Mr. Williams has presented affidavits from other inmates stating that the reason that he was sometimes not taken to medical for breathing treatments was because the prison was short staffed. Dkts. 75, 76, 77, 78. Accepting these statements as true for purposes of the motion for summary judgment, they do not support a claim of deliberate indifference. There is no evidence that any of the Defendants were responsible for not having enough officers on duty in the housing units at any particular time. In sum, Mr. Williams has not presented any evidence on which a reasonable jury could find that the custody officers were deliberately indifferent to his need for a breathing treatment. Officers Peak, Richey, Neal, Lowder, Rockel, and Haisley are entitled to summary judgment.

### 3. Claims Against Sergeants Gary, McNally, Pfleeger, Warner, and Nieman

Sergeants Gary, McNally, and Pfleeger contend that Mr. Williams lacks personal knowledge as to what each of them knew on the evenings of April 14, 16, or 17, 2019. They therefore argue that they lacked sufficient personal involvement to be liable. It is true that Mr. Williams did not have any contact with these Defendants on those dates, but it is likely that the statements made by custody officers that they told Sergeants Gary, McNally, and Pfleeger about Williams' requests for transportation to medical would be admissible at trial.

But, even if at trial it was proven that the officers did, in fact, inform Sergeants Gary, McNally, and Pfleeger about the requests for a breathing treatment, there is no evidence of record as to what actions Sergeants Gary, McNally, or Pfleeger took or failed to take in response to this information. The fact that Mr. Williams was not transported to medical on April 14, April 16, or April 17, 2019, alone, does not support a finding of deliberate indifference. "Summary judgment is appropriate if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (internal quotation omitted). Based on this record, no reasonable jury could find that these Defendants disregarded a substantial risk to Mr. Williams' health.

As to the claims against Sergeant Warner and Sergeant Nieman, both contacted medical on Mr. Williams' behalf. Medical staff told Sergeant Nieman that they could not see Mr. Williams the two times he called medical. Sergeant Nieman then directed the unit officers to monitor Mr. Williams' condition. In addition, Sergeant Warner asked an officer to come from the yard to the cell house to transport Williams, but one never showed up. As noted, the standard for deliberate indifference is extremely high, requiring a showing of even more than gross negligence or malpractice. *Goodloe*, 47 F.3d at 1030. Mr. Williams has not made this showing. No reasonable jury could find that Sergeant Warner's and Sergeant Nieman's actions were deliberately indifferent to Mr. Williams' serious medical needs.

## IV. Conclusion

For the reasons discussed above, the Defendants' motion for summary judgment, dkt. [122], is **granted.** Judgment consistent with this Entry and with the Entry of January 3, 2020, dkt. [74] dismissing Defendant Jones, shall now issue.

IT IS SO ORDERED.

Date: 6/2/2021

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

EDRICK WILLIAMS
159399
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Matthew Jacob Goldsmith
INDIANA ATTORNEY GENERAL
matthew.goldsmith@atg.in.gov